The next case today is Calvary Chapel of Bangor v. Janet T. Mills, appeal number 20-1507. Attorney Ganim, you may proceed. May it please the court, Roger Ganim for the appellant, and I would like to reserve three minutes for rebuttal. Yes. The court should reverse the district court's denial of a preliminary injunction because the governor's orders- Mr. Ganim, excuse me. There is no denial of a preliminary injunction. Your Honor, it brings up the jurisdictional issue, which I plan to cover at the front. Yes, but I'd appreciate your using the correct terminology. There was a denial only of a temporary restraining order. Thank you, Your Honor. And you were notified that the jurisdictional issue was going to be on the agenda for these arguments, all right? And I suggest that you get to it sooner rather than later because, in my view at least, it is a very serious issue. Thank you, Your Honor. We believe that the district court's denial of a temporary restraining order is tantamount to the denial of a preliminary injunction under this court's decision in Fidei Comiso della Tierra and the decision that it cites, the Levesque case, the earlier decision from this court. But in both of those cases, there was an adversarial hearing before the district court. We had a record. We had a district court making rulings based on documents that were produced, et cetera, in a courtroom. Here, we have a TRO that is granted, as I understand it, on the basis of a telephone conference. And we don't even have, never mind a record, we don't even have a transcript of that telephone conference. Is that correct? I do not know about the transcript, Your Honor, but it is true. Well, there's none that I can find in the record. Did counsel ever ask to have one prepared? Your Honor, we did not request one. So how can you say our case's talking terms of a TRO can sometimes qualify as a preliminary injunction if there has been a full and fair adversarial proceeding at the TRO stage? That doesn't sound to me like a telephone conference with no witnesses, no exhibits, and no transcript. Well, Your Honor, the FIDE e commisio de la tierra case, which I'll call the land trust case, makes it clear that the test is an either or. Either there is a full adversary hearing, or in the absence of review, further interlocutory relief is unavailable. And what the Levesque case tells- So let's talk about that. Why is further interlocutory review unavailable? Did Judge Torreson say anything to indicate that she was not open to a hearing at the preliminary injunction stage to make independent rulings on a preliminary injunction motion as a district court would ordinarily do? Did she say anything like, and these rulings will carry through all pretrial proceedings, something of that sort? No, Your Honor, but I believe that- And, excuse me, counsel, and in your experience with judges, don't you think that judges sometimes, just sometimes, are swayed by evidence and witnesses? So don't you think it's fair for us to think that it may very well have made a difference to Judge Torreson? Had there been a preliminary injunction hearing and someone had actually brought in some evidence, some live witnesses, some information about the size of your facility, what the situation was with respect to whether or not drive-in worship was feasible, a list- I started to make a list of the possible questions that you might have evidentiary submissions on, and I stopped when I got past 40, but don't you think that might have been helpful to a judge in deciding these weighty issues? Your Honor, if I may recount what happened here. After the initial motion for TRO was filed, the judge convened a telephone conference and instructed the parties, counsel for the parties, to explore the narrowing of issues, and the declaration of my colleague, Mr. Mehat, which is in the record, details those discussions and the issues considered. Then the district court allowed the briefing to be concluded and issued a 23-page order analyzing- Why would that occur at over what time span? That occurred over, it was approximately two weeks, Your Honor, something in that time frame. I thought it was shorter than that, but go ahead. I could be corrected on that, Your Honor. I thought it was under a week, but go ahead. I think what's important here is that the TRO standard and the preliminary injunction standard are essentially the same, and under the circumstances where the district court analyzes the issues and the cases and issues a reasoned and lengthy order like happened here, those were the circumstances in the Levesque case where the court said, having issued a decision on the merits that takes into account all the case law, there's no reason to think that the same plaintiff could go back to the same court and seek relief that had already been denied. Yes. Excuse me, but Judge Genoux in Levesque had evidence in front of him and did make a ruling on the dispositive issue and made it very clear that he was going to stick by that ruling. You don't have anything like that here. You want us to adopt a rule that says any time a district judge decides a TRO in a reasoned decision, regardless of what that decision is based on, regardless of whether there's been any sort of adversary proceeding, that we should treat that for appeal purposes like a preliminary injunction and ignore the distinction that 28 U.S.C. 1292A makes. And I'm not aware of any case that holds us or that encourages that sort of compressed procedure. Your Honor, I believe the Land Trust case and Levesque itself both contemplate either a full adversary proceeding or circumstances such as a lengthy order, like the circumstances in this case, where there's a clear indication there won't be any change in the decision. And as I said before... Excuse me. I missed that. What's the clear indication there won't be a change in this case? Because the standard for appeal in a TRO is...  Your Honor, we have a right to... You don't concede that evidence may make a difference? Well, Your Honor, I believe evidence does make a difference, and I also would point out we have a verified complaint and we have affidavits or declarations filed by the government in this case. So we do have an evidentiary record that the district court looked at and relied on in reaching the TRO denial. And I would also point out that we filed a motion for injunction pending appeal in the as a TRO and a preliminary injunction. So we believe here all indicators, all reasonable indicators are that the district court would not reach another decision on the same issue to give us the same relief we've essentially already requested and been denied. What are we to make of, in relation to this threshold question, the pretty emphatic statements from the district court in rejecting the free exercise clause challenge that it's plainly not... That it's plainly neutral. Nothing about that aspect of the analysis suggests to me that further factual development is likely to affect her determination on that score. I would agree with that, Your Honor, and that's why I believe that under the same standard, the district court would not reach a different decision, which justifies under this court's precedence an immediate appeal to this court. You know what we're supposed to do in a situation in which certain of her judgments, which are unfavorable to you, might seem more susceptible of being influenced by further factual development and other ones do not? Your Honor, I believe under the preliminary injunction standard being a likelihood of success on the merits based on the evidence that is currently before the court, I think that the... You pick out those statements of hers that seem categorical and say that part of it survives for our review, but the other portions of it that seem more maybe susceptible of changing it further factual, those you can't get review on now, I'm just not sure how we're supposed to proceed when the opinion is based on that limited of factual record done that quickly, and it has parts of it, which I agree with you, do sound like they're just pure legal determinations about the face of the order, and whether it sounds in neutrality, and it rejects your contention, and there's nothing that seems like factual development's going to change that. Then there's the Jacobson analysis, which seems like it might well depend on what expert evidence is put forward. Your Honor, I would say that the standard of review on a preliminary injunction case involving the First Amendment is a little different than in other contexts, where, as we've quoted in our briefs, the court is... What we're supposed to do with respect to Judge Selye's question about whether we have something you can appeal, given that it's a TRO, you say if it's like a preliminary injunction, then you can appeal it. That's obviously correct. So is this like a preliminary injunction? Well, the record and the proceedings don't make it look like one. Nonetheless, there are, at least in my view, some relatively categorical statements of a preliminary injunction, but other aspects of it are much more fact-dependent judgments just in their nature. So what does that mean with respect to whether you have an appealable order here? Your Honor, I would answer that we have essentially a facial challenge to the language of the orders and the disparate treatment that those orders impose on religious exercise. And so to the extent our challenge is on the face of the orders, I don't believe there's any further factual development that could assist the court. Counsel, you've confused me. You keep talking about those orders. I thought there was a single order challenged at the TRO stage. Your Honor, the Governor issued a series of orders beginning... I know that, but what was before the court at the TRO stage? At the TRO stage, we have the emergency declaration itself, which enables all subsequent orders. We have the initial gathering order, which prohibited religious gatherings. The subsequent order that expanded, you know, imposed the exemption, something like 40 categories of... That was before the court at the TRO stage? Yes, Your Honor. And also the stay-at-home order, which succeeded that, which we believe on its face reimposed an absolute ban on worship because it says you can only leave your house to do an essential business or operation, and religious worship was not included in that. So all of those orders were before the court, as well as the order looking forward at the time of the TRO hearing, or the TRO briefing, saying when churches might reopen for purposes of parking lot services. But at the time, we were before the district court. The best that can be said is that 10 people could worship in person, but we believe at that time it was actually banned altogether based on the stay-at-home order. And the fact that there had been no subsequent relief from that. As we sit here today, we still have the stay-at-home order, the initial gathering restriction. They're only changed by the governor's delegation of power to a cabinet agency to adjust what kinds of businesses and operations can reopen. And so we have a constantly shifting number of people who are allowed to worship. The gathering order that's before us, is the 10-person gathering order, or is it the 50-person gathering order? Your Honor, it's the 50-person limit was only allowed by the earlier orders. I'd go back to Order 49 that implements the restarting. In terms of, you sought a temporary restraining order against certain orders, right? The order you sought to restrain was a 10-person gathering order and a stay-at-home order? That's correct, Your Honor. Is there any, the 50-person gathering order was not something you sought to restrain, correct? Yes and no, Your Honor. Yes, because we challenged the order that allowed that 50-person limit to be imposed in the future. And it's the same order that would allow the governor now to back off of that and take it back down to 10 or zero. And so, the emergency authorization order, the declaration of emergency order, is that what you're talking about? No, the Order 49, which adopted the Restarting Maine's Economy Plan, which essentially opens up all of these decisions to sort of cabinet-level agencies or the governor, however the governor wants to proceed. But they're constantly changing. As we pointed out in our reply brief, there's already now a re-imposition of responsibility. Did you address that challenge to that order? I'm sorry, I didn't hear you, Your Honor. Did the district court separately address your challenge to that order? I don't believe the district court separated them out, Your Honor. The district court analyzed them sort of as a unit, imposing either a 10-person or absolute ban on worship. The 50-person limit did not exist yet when we were in the district court. Okay, so what you're appealing from is an order that denied your attempt to get the 10-person and or stay-at-home ban restrained, correct? Yes, Your Honor, but also before the district court was our claim that any order that treats on its face religious conduct differently from non-religious conduct was also being challenged. So it was forward-looking as well because we have the exact situation that we have here. The Restarting Maine's Economy Plan is a constantly shifting series of restrictions and then relaxed restrictions and then re-imposition of restrictions. That's what's going on. All of it as a unit are the governor's orders that were challenging to the extent they disparately treat religious conduct as compared to non-religious conduct under the Pre-Exercise Clause. Counsel, before you proceed, let me ask Judge Salia, Judge Barron, do you have other questions that you would like to get to? No, that's all. Your Honor, we pointed out in our briefs all the reasons. Counsel, I'm going to go ahead and cut you off there. We've run considerably over time, but you have reserved some time for rebuttal. Thank you, Your Honor. If you would mute. And Mr. Todd, you may proceed. Good morning. May it please the court. Since the court is clearly interested in this issue of the appealability of the order below, I'll start with addressing that. And this is probably the only thing that the parties can agree upon in this case, which is that we think that this order is appealable. And there are a couple of different points that I want to make about that. The first point is that the court, if it wants to, doesn't even have to get to the issue of whether the order is appealable or not. Because under Claire International versus Mercedes-Benz, there this court said that it doesn't have to get to jurisdictional issues if the appeal is uncomplicated and easily resolved in favor of the party who would benefit from a finding of no jurisdiction. So that is certainly one avenue that the court could take. Was that word uncomplicated? Uncomplicated, yes, Your Honor. I thought that was it. But going to the issue of sort of what happened below, for all intents and purposes, this and really got resolved exactly the same way that Bailey's campground case got resolved, just on a more expedited fashion. But in this case, Calvary, when they filed their motion, it was actually a motion for both a PI and a TRO. It was combined. And so the court ordered us to respond to it. We submitted declarations. I believe Calvary submitted declarations. At least from our perspective, we assumed that we were briefing a PI motion since this court had invited us to respond. So we submitted declarations. We submitted a brief. And so in our mind, at least, we understood that this was a PI motion. Now, also, the court's decision goes well beyond what you would expect from a typical TRO order. The court went through all of the different legal and factual issues, wrote a 23-page decision. But can I ask you something about that, counsel? So what I've been hung up on a little bit is not the merits claim, but the serious or irreparable harm claim. So the complaint said they may be subjected to criminal prosecution. And I suppose that's all that was in front of the district court. But if time went on and there were a preliminary injunction proceeding, whether they needed to amend or not, it seems to me that that's the kind of thing that would be subject to evidence. Am I wrong about that? And you really could have, I think, a shifting landscape there. So I'm with Judge Selye. I'm not so sure we should be so quick to jump into this. But you tell me. Well, I mean, I think in this case, I mean, yes, there was no evidentiary hearing. Although my recollection is that no party requested one either. I don't think that that was ever foreclosed. But what the parties did do is they submitted declarations, which at least in the District of Maine, it's pretty rare for there to be evidentiary hearings on a preliminary injunction motion. Is it rare for there to be transcripts of arguments? Well, I don't believe that there was an argument in this case. I think that the only telephone conference we had, and again, my memory is sort of going back, and a lot's happened since then, but my memory is that the telephone conference was sort of setting up the matter and then also sort of setting up a briefing schedule. There was never any oral argument. And my memory is there wasn't any oral argument on the Bailey-Campdorn case either. You know, it's not unusual if no party requested, for the District of Maine at least, to decide preliminary injunction motions just based on the briefs and the declarations. Yeah, of course the District Court didn't decide a preliminary injunction motion here. And it's a big difference because the TRO, by statute and rule, could only have lasted for 10 days. It's just a stopgap. Right, yeah. So I guess there are a couple things I'd like to say about that. First, I think that the standard is, or the test that's applied, is whether the order has the practical effect of refusing an injunction, whether it might have irreparable consequence, and whether the order can be effectively challenged only by immediate appeal. And so I think that those elements are probably met here. I mean, for all intents and purposes. Right, why? What barrier was there to approach? If there was some barrier to a preliminary injunction hearing, I could understand that. What barrier was there? Well, there was no barrier. I mean, instead of sparring, you couldn't use the same time you spent sparring about an injunction pending appeal. The District Court is obligated to convene a preliminary injunction hearing within 10 days. No one asked her to do it. But you're suggesting that it's because no one thought there was any reason to do it since it had already been done. Is that my understanding? I think, yeah, I mean, Your Honor, again, I go back to absolutely. Judge Torrison's order is captioned as an order on a TRO. Yes, and it makes it clear from its body and from the order that was entered that all that she did was deny the TRO. Right, and then the other thing we have, of course, is that Calvary appealed like literally hours after she issued it. That's right. So we don't know whether she was going to issue some sort of further order. But I think at least the parties understood that they were involved in a preliminary injunction proceeding, and I guess part of the reason that we are taking this position is that we understood that what we were doing was preliminary injunction briefing. And so we went all out over the course of a few days to develop all of the evidence, put together the declarations, write up a brief, and submit it to the District Court. And then she issued her decision, she analyzed all the issues, and the preliminary capital didn't ask for some further preliminary injunction hearing, they immediately appealed. And so in our view, where the parties are really treating this as a preliminary injunction matter, and also I think if you read her opinion fairly, I don't think there are any set of facts that would come forward that would really change her ultimate conclusion. So I would say that in these circumstances, this really was effectively,  there really wasn't anything left to do in the District Court with respect to preliminary relief. You want to just talk about the merits? Sure. Could you explain to me what orders you understand are before us and how we're supposed to think about it? Yes. So let me just start by saying, because I just want to sort of address some of the appellant's suggestions in their brief, that the state of Maine understands how important religion is in many people's lives, and beyond being important from a spiritual aspect, it's also important from a constitutional perspective. And we understand that religion has special protection under the First Amendment. And so we don't take that lightly, but at the same time, the state was facing an unprecedented pandemic, and so we had to balance that interest in protecting religious freedom against the health and safety of Maine's people. To answer your question, Judge Barron, so the only, so first of all, in my view, and I think if you look at the complaints, and if you look at the PI briefing, and if you look at the judge's order, there's nothing to suggest that the plaintiffs were ever arguing that people are prohibited from leaving home to attend religious services. But that is really an argument that they have developed since the preliminary injunction proceedings, and it's an argument that's just completely factually wrong. I mean, yes, the order about staying at home is a little ambiguous, but we have repeatedly and unequivocally said that we consider attending worship services to be an essential activity, and it's one that people can leave home to do. So first of all, I just want to point out that this argument that they were also challenging a stay-at-home order, I think if you look at the complaint, and you look at the briefing, and you look at the order, you're not going to see that. But I think sort of the trickier question, and this is a question that I thought a lot about, and I'm not sure I have a good answer, is whether at this point the issue is the 50-person restriction or the 10-person restriction. And I think what I would say to that is this case is a little different than the Bailey Campground case, where we had a fundamental shift in the nature of the restriction. Here, really all we had was an increase in the numbers. So we went from 10-person indoor gatherings to 50-person indoor gatherings. And in our view, that doesn't really affect any of the analysis of the case. So we don't think whether it's 10 or 50. Well, just for humor me, though, which order is it? Suppose I was going to restrain, we were going to issue a restraining order. What would you restrain? Well, I mean, the order that's in front of the court is the 10-person gathering restriction. Which is no longer in effect. Which is no longer in effect. And I recognize there's some tension between the position that we're taking here and the position that we're taking in the Bailey's case, where we're arguing that it's moot. I definitely recognize that. But I think the reason that that tension is resolved to some extent is, again,  the case. But you're absolutely right, Your Honor. I think if you were going to issue a decision and you were going to enjoin an order, it would be the 10-person order that you would be enjoining. With respect to that 10-person order, then, could you just, for purpose of trying to figure out neutrality and tension and whether this is a generally applicable law neutral with respect to religion, as I read the stay-at-home order as you describe it, and the 10-person gathering order, what are the activities that are not employment-related that are prohibited? Well, so... Because almost all of the gatherings are swamped by the stay-at-home order. So if I understand it, all that's left are those gatherings that are essential activities that are not employment-related. Is that right? Is that what's permitted? Right. So under the stay-at-home order, you can leave home to either work at an essential business and operation or to engage in an essential activity. Okay. And what are essential activities? You say going to church is one. Right. So the way the order is phrased is it sort of gives kind of a definition of what is an essential activity. And then it sort of gives specific... As your understanding is, church, going to church services are treated the same way as what? Other essential activities? We would say that they're treated the same way as obtaining medical or mental health services, because we equate spiritual health or spiritual well-being as being roughly equivalent to physical and emotional health. But the exception to which you point doesn't make any mention of religious attendance as such. Right. I mean, you've got to feed between the lines to get to where you want us to get. Yes. You know, I mean, Your Honor, these orders are being put together, you know, as the conditions are evolving. And so, yes, it is somewhat ambiguous about whether or not going to church or religious services would be considered an essential activity. But I think the important thing is that both the Attorney General's Office has affirmatively stated to this court that as we interpret it, it includes going to religious services. And I think our interpretation, I think this court has historically given our interpretation considerable deference. But the other thing that I can tell you is that even if you think that our interpretation isn't a reasonable one, I can affirmatively state that there is no threat of enforcement. The state is not going to enforce the stay-at-home order for someone who leaves home to attend religious services. So to that extent, there's not even really any case or controversy because there's no threat of prosecution. I can't say it any more clearly. People may leave home to attend religious services. So then can you just run through the – so from your perspective, what we are faced with is an order that imposes a gathering restriction on non-employment activities of a relatively limited class that includes religious worship. And that includes going to a doctor, going to a therapist, or going to a church. Is that about it? Well, so I will say that – I mean, I'm just pulling up the order, but there are a host of activities that are included. So for instance, going grocery shopping, obtaining medicines, engaging in outdoor exercise, I think getting staples. I mean, there are all kinds of things that are considered essential activities. And so I don't have the order right in front of me. None of those are employment-related? Right. Those are completely separate from – so for example, you can leave your home to go take a run on the Back Bay Path, or you can leave your home to, I mean, go grocery shopping even though you're not actually working at the grocery store. But for all those activities, the gathering restriction kicks in. Right. The gathering restriction is still on top of it. So for example, you could leave home to exercise, but you can't exercise, at least at the time. You couldn't exercise in a group of more than 10 people. And one last question. Does the gathering restriction kick in to employment-related activities? So if I wanted to have a barbecue for all the law clerks of the First Circuit during office hours, would I be able to do that or not able to do that under the gathering restriction? I mean, so to make sure I understand, so if you wanted to have an in-office gathering of court staff. Correct. For social purposes, but we're all employees and it's part of your job-related function. Is that permitted or not permitted? So these orders are interpreted by different agencies in the state of Maine, and that particular issue, as far as I know, hasn't come up. But at least in my view, that would be considered a gathering. Because the point of the gatherings – and I just want to step back a second because I think there's maybe a little bit of confusion. If 50 people are in a grocery store all at the same time, that's not considered a gathering. That's a completely different set of restrictions, which applies to how many customers can be in a retail operation at a specific time. So what the gathering restriction applies to is it applies to sort of communal events where people are gathering together for some communal purpose and are staying together for that period of time. So while certainly your court staff could come work at the court, if you wanted to go in the conference room and have a gathering of 50 people and have sort of a social gathering, that would be considered a gathering and that would fall within the restrictions. Does that answer your question, Your Honor? Yeah, I guess I'm just – are you saying that is Maine's position or that's your view of what Mike's saying? I'm not the final interpreter of these orders. I mean, these orders are issued by the governor, so ultimately it's the executive branch that has to interpret these. But I'm fairly certain, I think I can say with pretty good certainty, that basically a party at a place of business would be considered a gathering. I mean, it wouldn't make any sense to say that everyone could go outside to some park and have the party, because that clearly would be a gathering, to say that you can't do that, but it's fine as long as you do it within a courthouse conference room. So I think I'm reasonably confident in saying that sort of a social gathering within a business operation would be subject to the gathering restrictions. Can you gather the 50 employees to give them their instructions for the day, like police departments do with roll calls? Yeah, I don't think that would be considered a gathering. I think that would just be considered part of sort of the normal employment operations. Can you include 15 minutes of a morale boost, or five minutes of a morale boost during that gathering? Sorry, I used the wrong word. Yeah, I mean, I was afraid this would happen, because there are hypotheticals that are difficult to address. I'm just asking you if they have been addressed, if you have a position on them. No, as far as I know, they haven't. I mean, these always don't come to the Attorney General's office. It's sometimes decided. But I think sort of the point I want to make also is that this isn't just semantics in terms of like what's considered a gathering and sort of what's considered something else, like shopping at a store. We presented evidence there's a fundamental difference between sort of social and communal gatherings as opposed to someone going to a grocery store. And I think this was really hit home, and I think it's fair to take judicial notice of this, because Yeah, but you're walking away from the close question that you were asked. Okay, well, I'm sorry, Your Honor, if you want to ask again Before you, what I'm trying to, as I understand it, there's two different components to the inquiry on the free exercise. There's the first question of whether we have a law of general applicability. And then there's a second question of what follows if we don't. If we do have a law of general applicability, as I understand it, the state's in a very strong position. And I think there's sometimes been a confusion around how much of a justification you have to have for a law of general applicability. So I'm really trying to get at whether you have a law of general applicability. If the gathering restriction applied even in businesses, that certainly would support the idea that it's a law of general applicability. If it does not, and it sounds like it may be we have to assume it does not. The next question is, is it nonetheless a law of general applicability? And if so, why? And as I understand it, your earlier answers to me were suggesting that there's a basic divide between the treatment of employment-related activities and non-employment-related activities. And so long as you're engaged in a non-employment-related activity, the reason it doesn't apply to others is because they're employment-related activities, all of which are treated differently. And I take it you say that's just a neutral criterion for distinction. Yeah, so I do want to make sure I'm answering the court's question because I'm not trying to walk away from anything. First of all, it's neutrally applicable because it applies to all gatherings of any sort. So that's just point one. Now, point two. Except for employment. Well, the hypothetical that you gave, Judge Barron, of sort of an office party, as I said, I'm almost positive that that would be considered a gathering. Humor me for a moment. Let's say because that's unclear, we have to assume that there's an exception for gatherings in employment settings, that all employment settings are treated differently than all non-employment settings. If that were so and the gathering restriction applied only to general applicability. Yes, it would, Your Honor, because it still applies to all manner of gatherings, and I think there's a distinction between a gathering in an employment context versus other kinds of gatherings. But it doesn't apply to a gathering. It doesn't apply, for example, if you've got 75 people inside a supermarket shopping. Those people aren't engaged in their own employment. Right, and that's because that's not a gathering. And I recognize these terms are a little difficult to wrap our arms around, but a gathering is something like a wedding, a funeral, a concert, a parade, where everyone is going for a period of time and sort of they're engaged in a communal experience. And as Dr. Shaw pointed out, there's a much different level of risk associated with that kind of activity than someone passing someone in the grocery store and saying hi and maybe stopping to chat for a few minutes. And I think it's been widely reported in the news, and I think the court's probably already aware of this, that we had a wedding, which is another kind of gathering, in Millinocket with just 65 people, and we're now dealing with over 150 cases. I think you're getting outside the record. And just to point out, Your Honor, I think the appellants in their brief did point to some news articles as well, but point taken. So, Judge Selya, additional questions of Mr. Tubb? No. Judge Barron? No, I think I'm okay. All right. Thank you. Thank you, Your Honor. Mr. Ganim, I believe you have reserved three minutes. So you'll need to unmute your mic and your video. Judge, it's Dan. He had indicated that he was having a lag when he did this, and sometimes it takes a minute to clear. All right. Mr. Ganim. Thank you, Your Honor. I want to turn to the merits here and point out that the biggest problem that Maine has with the general applicability issue is what I'll call the same building problem. On the face of the orders that we've challenged, which we put in paragraph 50 of our complaint, which was all of them up to that point in time, on the face of those orders, a church was prohibited from worship or at best could have worship with 10 people in its building, but in the same building could host an unlimited number of people for providing food, providing shelter, providing social services, such as job counseling, drug counseling, whatever the case may be. So in the very same building, a church could host an unlimited number of people. Why is that the right test for whether it's a law of general applicability? As I understand the orders, there is a divide between the way employment-related activities are treated and non-employment-related activities. Now, why is the divide itself a neutral one with respect to religion? I don't follow. I disagree, Your Honor, because the essential businesses and operations are defined to mean all-profit and non-profit activities that are specified in the 40-something category. So it's not limited simply to employment. We have, for example, the provision of social services, non-religious services that I've pointed out can happen in a church building, but as soon as the pastor turns to that same number of people in the same building and begins a worship service, that would be prohibited under the plain and natural reading of these orders. That's because the gathering restriction kicks in, right? But that's correct, Your Honor. What distinguishes those things that are subject to the gathering restriction from those that are not? As long as that criteria is a generally applicable criteria, I don't follow what the free exercise challenge is that it's not generally applicable. I'm just not getting that. Your Honor, we disagree that it's generally applicable criteria because the same number of people could be assembled for an unemployment counseling session, for example, for two hours every day of the week, but a one-hour worship service for the same people in the same building, which is... That's not an argument that it's not generally applicable. That's just an argument that you think there's no sense to the distinction. Well, no, I just... The question is, is there a distinction that's being drawn on a generally applicable basis? Well, Your Honor, we don't think, we think whether there's... Someone can smoke a cigarette, but they can't smoke peyote. That may make no sense. But the law banning the peyote is a neutral law. You see what I'm saying? You're not answering that aspect of the question for me. So just keep, by continually saying that in the same building, similar things can happen doesn't address the concern that I'm trying to get you to answer. Your Honor, I'm trying to answer in accordance with the Supreme Court standards set forth in Lukumi, which says that when the government restricts religious conduct, but it doesn't restrict similarly risky... It's not just religious conduct, because there's a whole category of things like religion that are treated similarly to religion. So that, it can't be a Lukumi case. Well, I disagree, Your Honor, because... Assume it's not a Lukumi case. If you want to say it falls into the exception for employment submission versus Smith on the ground that this is riddled with exceptions, I'm not seeing how that argument works, because the criteria that divides it seems not to have exceptions, which is a criteria that's treating a gathering restriction as applicable to this category of things and not some other thing. And it's along a line that I don't see how that line is riddled with exceptions. Well, the point I'm trying to make, Your Honor, is sitting in the same room surrounded by a hundred other people for a social services counseling session is identical conduct to sitting in the same room for a worship service, but they are treated differently under these orders. And therefore, even under employment division versus Smith, which Lukumi is simply built on, we have a law that's not of general applicability. And we would also point out that there's also no religious neutrality here, because if we go back to the original gathering order, religion is treated in the same category as social, personal, and discretionary events. In other words, unimportant, and so we can stop it. Whereas, as we see through the development of the orders, hundreds of other things in these 40 different categories were permitted. And I would additionally point out, Your Honor, that beyond essential businesses and operations, these orders even allow what are considered non-essential businesses and operations, literally everything else, to meet without restriction or to operate without numeric restriction, as long as its employees are socially distanced from one another. So the exceptions are so huge that they swallow the rule, and we don't have a generally applicable set of restrictions, because everyone can get out of them except for churches, which were expressly prohibited in the original gathering order for meeting, and then subsequently never pulled out from that. And the Maine's position that going to religious worship is the same as going to get medical care is brand new. If I want to get 25 people together for a book club, I can't do that, can I? I don't believe so, Your Honor. But you can get 25 people together for a counseling session on how to obtain unemployment benefits. Right, but that doesn't have it. You're making the point that the criteria is not singling out religion. No, Your Honor, because the conduct at issue, the conduct that implicates the government's interest, which is people being together in the same space for a period of time, the conduct is identical. It's just one is motivated by religious reasons, going to worship, and other conduct is not motivated by religious reasons. But under the Supreme Court standard, what we must look at is, is the state allowing things of similar risk, not things that look just the same as on the surface, but is the state allowing conduct of similar risk to worship while restricting worship? And if that's the case, it doesn't meet the free exercise standard. Judge Selye, additional questions? No, thanks. Thank you very much. Thank you to both counsel, and we will take this case under advisement. Thank you. That concludes the arguments for today. The session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may now disconnect from the meeting.